The defendants appeal from a summary judgment in an action contesting the validity of a document purporting to be the will of Clarence G. Owen (hereinafter "the decedent"). Jack deGraaf, the decedent's nephew, filed a petition for probate of a four-page document that he alleged to be the decedent's will and for letters testamentary regarding the decedent's estate. The probate court granted deGraaf's petition, and John W. Owen, the decedent's brother, subsequently filed a complaint in the circuit court contesting the validity of the decedent's will. Jack deGraaf, along with Rita O. Kimble, Lisa King Byers, Ronnie deGraaf, William Glen Owen, Artie Ray Owen, Minnie Marie deGraaf, and Edward C. Owen, as defendants, answered the complaint and moved for a summary judgment. John Owen also moved for a summary judgment. Thereafter, the trial court entered a summary judgment for John Owen, and Jack deGraaf and the other defendants appealed.
The issue raised on this appeal is whether the trial court erred in holding that the document admitted to probate as the decedent's will did not meet the requisites of a valid will.
The undisputed evidence reveals that on October 1, 1988, approximately a month before his death, the decedent executed four documents, each purporting to be a "Last Will and Testament." In each of the documents, which were actually forms taken from a "will kit," the decedent made specific devises of his real property and bequests of his personal property. In one document, the decedent stated that he was leaving to his sister, Minnie Marie deGraaf, and to John Owen, "my love," stating, "they have more than I did." In another document, the decedent left to his nephew Edward Owen a 1982 model pickup truck and a house and lot that Edward Owen was already purchasing from the decedent. In a third document, the decedent divided several items, consisting mainly of rings and insurance policies, between William Glen Owen and Artie Ray Owen. In the fourth document, the decedent divided certain other items of personal property among three of his nieces and Jack deGraaf. In the three documents in which devises and bequests were made, the decedent appointed Jack deGraaf as executor and William G. Owen as alternative executor. In the document containing only a statement of his love for Minnie Marie deGraaf and for John Owen, the decedent left blank the provision concerning the appointment of an executor and alternative executor.
The decedent's signature on each of the four documents was witnessed by Donny Schultz, James Preston, and Bruce Dyess, and by a notary public, Karen Y. Howell. In witnessing the decedent's signature, Schultz, Preston, and Dyess each acknowledged under oath that the decedent signed the documents in their presence and that he acknowledged the documents as being his will and further that he appeared to be of lawful age and of sound mind and memory at the time he signed the documents. Indeed, it is undisputed that each of the documents was validly executed pursuant to § 43-8-131, Ala. Code 1975.
On November 2, 1988, the decedent died. Sometime after October 1, 1988, the decedent had instructed Jack deGraaf that he had a will and insurance policies in a metal box at his home. The decedent had further instructed Jack deGraaf that upon the decedent's death, Jack deGraaf should get the box and the documents. Jack deGraaf testified in his deposition that, according to the decedent's instructions, he, along with *Page 894 
William Owen and Edward Owen, went to the decedent's house soon after the decedent's death and obtained the metal box. Jack deGraaf further testified that he took the box to his home and opened it and that inside the metal box was an envelope with the four documents that the decedent had executed on October 1, 1988, folded together.
On appeal from the trial court's judgment holding the documents invalid as the decedent's will, John Owen argues that the judgment of the trial court is due to be affirmed because, he argues, each document contains language expressly revoking all prior wills, thereby making all of the documents void. However, Jack deGraaf and the other appellants argue that because each of the documents contains different bequests and devises, the documents can be construed together to be one will.
Initially, we note that the issue raised on this appeal, in the context of the facts of the case, presents a case of first impression for this Court; our research reveals no other Alabama cases concerning the effect to be given to separate wills executed by the same testator on the same day. However, this issue has been considered by the Supreme Court of Arkansas in Bradshaw v. Pennington, 225 Ark. 410, 283 S.W.2d 351 (1955), and by the Supreme Court of California in In re Murphy'sEstate, 104 Cal. 554, 38 P. 543 (1894).
In Bradshaw, six sheets of holographic writings that were each executed on the same day and that were complete in themselves and mutually exclusive as to their bequests, were admitted to probate as the will of the testator. Affirming the trial court's admission of the documents to probate, theBradshaw court stated that the law is well settled as to a testator's right to make a number of testamentary documents, each dealing with a separate portion of his property. Two or more wills, said the court, may be probated and effectuated in the same way that a will and one or more codicils are construed together. The court pointed out that when all of the sheets were read together, they showed an intent of the testator to leave separate portions of his estate to specific legatees. See
Annotation, Probate Where Two or More Testamentary Documents,Bearing the Same Date or Undated, Are Proffered, 17 A.L.R.3d 603 (1968).
In In re Murphy's Estate, two testamentary instruments executed on the same day were admitted to probate as a holographic will, the court finding that they were not wholly inconsistent. After the two instruments had been admitted to probate, a petition was filed to revoke the probate of the will. The petition was granted on the ground that the two instruments were inconsistent and irreconcilable. In reversing, with directions to enter a judgment against the contestants of the will, the California Supreme Court held that because the instruments were executed on the same day, they should be taken together to be the testatrix's will, unless they were wholly inconsistent. The Murphy court found that instead of being wholly inconsistent, the instruments were, in most of their material parts, substantially identical. Id.
The holdings of Bradshaw and Murphy are consistent with other similar cases. See, e.g., In re Fould's Will, 21 Misc.2d 402,196 N.Y.S.2d 816 (Sur. 1960) (two separate wills may be construed together and both admitted to probate), aff'd,13 A.D.2d 16, 212 N.Y.S.2d 519 (App.Div. 1961), aff'd, 10 N.Y.2d 1027, 225 N.Y.S.2d 46, 180 N.E.2d 434 (1962); In re Andrews'Will, 195 Misc. 421, 88 N.Y.S.2d 32 (Sur. 1949) (where reasonable and practicable, two or more wills may be probated and effectuated together in the same way that a will and one or more codicils are construed together). The approach taken in most jurisdictions, according to one commentator, is that:
 "Where two or more testamentary documents are proffered as the last will and testament of the testator, and they are not wholly inconsistent with each other in the testator's scheme of distribution of his estate, all the documents will ordinarily be admitted to probate as one will, no matter in what order they were executed. . . . And the same rule has been applied not only where the documents in *Page 895 
question appeared to have been executed as a will and codicil, but also where they did not appear to be related to each other in any manner."
17 A.L.R.3d at 605. Furthermore, we note the following passage from 94 C.J.S. Wills § 161 (1956):
 "A will may be comprised of two or more separate instruments. Thus, two or more instruments, purporting to be wills of the same person and properly executed at the same time, will be treated as one will and as though combined in the same instrument."
Applying these principles to the facts of the present case, we hold that the four documents executed by the decedent on the same date should be construed to constitute one will. As noted above, the documents are not inconsistent with each other, as each makes different devises and bequests. This fact, coupled with the fact that the documents were executed by the decedent on the same day, yields the inevitable conclusion that the decedent intended the documents, in toto, to be his will. John Owen's primary argument to the contrary is that each document contains language revoking all prior wills. His argument on this point, however, is unpersuasive, in light of the undisputed fact that the decedent simply filled in the blanks on forms taken from a will kit and the fact that there is no evidence other than the form language itself indicating that the decedent intended to revoke the simultaneously executed wills. See Kelley v. Sutliff, 257 Ala. 371, 59 So.2d 65 (1952).
Our conclusion that the four documents the decedent executed are to be construed together as one will is consistent with our prior holdings on the validity of wills in general. For example, in First Nat'l Bank of Birmingham v. Klein, 285 Ala. 505, 234 So.2d 42 (1970), this Court stated that the intention of the testator is always the polestar in the construction of wills, and that the cardinal rule is to give that intention effect if it is not prohibited by law. Also, in Barnewall v.Murrell, 108 Ala. 366, 18 So. 831 (1895), this Court held that once jurisdiction, testamentary age, and proper execution are shown, all presumptions arise in favor of the validity of the will, and that if any theory consistent with the validity of the will can be suggested that appears to be as probable as the theory on which the argument for the invalidity is based, the will as found must be maintained. Finally, in Stanard v.Miller, 212 Ala. 605, 103 So. 594 (1925), this Court stated that the validity of an instrument as a will is unaffected by form or the fact that it may be composed of several separate sheets, if the document is connected and coherent in meaning.
In view of the persuasive authority from other jurisdictions, and considering our strong public policy supporting testamentary disposition rather than intestacy, see Anderson v.Griggs, 402 So.2d 904 (Ala. 1981), we conclude that the judgment of the trial court is due to be reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES and ADAMS, JJ., concur.